**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Paul DE LUCIA, Defendant-Appellant.**

**No. 12094.**

United States Court of Appeals
Seventh Circuit.

June 18, 1958.

William Scott Stewart, Chicago, Ill., for appellant.

Robert Ticken, U. S. Atty., Edwin A. Strugala, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel), for the United States.

Before SCHNACKENBERG, HASTINGS and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant appeals from an order of the district court adjudging him guilty of contempt of that court in violating an order entered in the case of United States of America v. De Lucia, then pending in said court, and fining him $500 therefor.

It appears that, while a denaturalization proceeding brought against De Lucia was pending in the district court,[1] the government proceeded to take his deposition before a notary public, where he was

1. An appeal from a judgment against De Lucia in said case was heard in this court. We affirmed. 256 F.2d 487.

duly sworn, and that (according to an affidavit of the assistant United States attorney assigned to the prosecution of the denaturalization case), during the course of the examination, government counsel asked De Lucia a series of questions, and that, "on the advice of his attorney William Scott Stewart, and also on his own initiative the defendant refused to answer the questions on the basis of the Fifth Amendment to the Constitution of the United States, asserting that to answer the same would tend to incriminate him."

The examination by government counsel commenced, as follows:

"Q. Will you state your name? A. Paul De Lucia.

"Q. Where do you live, sir? A. 1515 Bonnie Brae, River Forest.

"Q. Mr. De Lucia, on January 9 of 1925, did you file with the Clerk of the Circuit Court of Cook County a declaration of intention, No. 162822, to become a citizen of the United States of America under the name of Paul Maglio? A. I respectfully refuse to answer. I don't want to be witness against myself, and I will declare the privilege of the Fifth Amendment.

"Q. And at this time, you honestly believe that if you answered that question, you would tend to incriminate yourself? A. I refuse to answer.

"Mr. Stewart: He refuses to answer that question, too.

"Mr. Bickley (government attorney): Q. Mr. De Lucia, on February 21, 1928, did you cause to be filed with the District Director of Naturalization in the Federal Building, Chicago, Illinois, your preliminary form for petition for naturalization, No. 370–55072, under the name of Paul Maglio? A. I refuse to answer for the same reason.

"Q. Do you honestly believe that if you answered that question, it would tend to incriminate you? A. I refuse to answer for the same reason."

The interrogation by government counsel proceeded along the same general lines and the record shows that De Lucia's answer as aforesaid was repeated over 100 times.

The notary public, having certified to the court the aforesaid proceedings, the court, on the government's motion ordered that defendant answer the oral interrogatories posed at his deposition within three days. Thereafter the government showed De Lucia had failed to answer said interrogatories and moved the court to enter a rule on him to show cause why he should not be held in contempt of court, upon which motion the court deferred its ruling until after the trial of the denaturalization case. On the same day the court denied defendant's motion for reconsideration of its order requiring defendant to answer oral interrogatories. After the trial in the denaturalization case had ended, the district court allowed the government's motion for a rule to show cause and granted defendant 10 days to answer the rule, which he did. He therein relied, *inter alia*, upon "the privilege guaranteed by the Fifth Amendment". The contempt order followed.

■■ The law is settled that the provision of the Fifth Amendment "that 'No person * * * shall be compelled in any Criminal Case to be a witness against himself' " must be accorded liberal construction in favor of the right it was intended to secure. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118. It has also been held that the privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. Hoffman v. United States, supra, and Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170.

In the Hoffman case, the court said, 341 U.S. at page 486, 71 S.Ct. at page 818:

"* * * To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a

responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' "

It is apparent from the record before us that De Lucia was claiming his privilege under the provision of the Fifth Amendment and that government counsel and the notary public so understood it. He did so against the background of the pending denaturalization proceeding. It is obvious that his answers, if required, would furnish a link in the chain of evidence needed by the government to prosecute De Lucia for a federal crime. To us it appears clear that he was entitled to rely upon the privilege which he claimed. That being so, it was error to adjudge him guilty of contempt of court.

Therefore, the order from which this appeal has been taken, is reversed.

Reversed.