511 So.2d 119 (1987)
MISSISSIPPI STATE BAR
v.
ATTORNEY L.
No. CM-223.
Supreme Court of Mississippi.
July 22, 1987.
Michael B. Martz, Jackson, for appellant.
Stella Terrell, Yazoo City, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and PRATHER, JJ.
ROBERTSON, Justice, for the Court:

I.
This motion in the nature of an interlocutory appeal presents sensitive questions regarding a lawyer's Fifth Amendment rights when he is the subject of a disciplinary proceeding brought by the Mississippi State Bar. The lawyer asserts that the questions he has been asked would, if truthfully answered, tend to incriminate him; that is, the questions would require that he disclose information that could be construed to suggest that he has been guilty of conduct proscribed by federal and state criminal codes. By reason of the irreversible nature of disclosure, we have brought the matter here before proceedings before the Complaint Tribunal have run their course.
Having reviewed all of the questions in response to which the lawyer "took the Fifth," we hold that a handful are not privileged but most are. In substantial part, we vacate the order of the Complaint Tribunal.

II.
On January 31, 1986, the Mississippi State Bar ("MSB") filed with this Court a *120 Formal Complaint against the Respondent, Attorney L, who has his law office in the state of Louisiana. Compare Brumfield v. Mississippi State Bar Ass'n., 497 So.2d 800 (Miss. 1986). In that complaint MSB alleged that Attorney L has violated the provisions of Disciplinary Rules 1-102(A)(1, 4, 5 and 6) of the Code of Professional Responsibility which provide that a lawyer shall not violate a disciplinary rule; engage in conduct involving dishonesty, fraud, deceit or misrepresentation; engage in conduct that is prejudicial to the administration of justice; or engage in other conduct that adversely reflects on his fitness to practice law. MSB's Formal Complaint also alleged that Attorney L violated the provisions of DR7-101(A)(3) which provides that a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

A.
The basic factual allegations,[1] underlying the above conclusory allegations, are as follows: On or about March 31, 1985, E.W.E., hereinafter referred to as "Client", a Mississippian, was injured in an automobile train accident. On April 6, 1985, Client executed Retainer-Power of Attorney which on its face employs Attorney L to represent Client in a personal injury claim for damages. MSB alleges that Client was heavily sedated via medication when she executed the Retainer-Power of Attorney and as a result was unaware of the nature or consequences of her actions.
At sometime thereafter, still in April, 1985, Client attempted to discharge Attorney L as her attorney. Notwithstanding, Attorney L continued to act purportedly in Client's behalf and did thereafter negotiate a settlement with the responsible party's liability insurance carrier. The settlement amount was $10,000.00. Attorney L advised Client of said settlement negotiations by letter of May 2, 1985.
By letter of May 9, 1985, Client again advised Attorney L that he had been discharged and instructed that Attorney L perform no further work on Client's behalf. Attorney L neglected these instructions, as well.
On May 23, 1985, after receipt of Client's letter of May 9, 1985, Attorney L compounded his sins by forwarding to the liability insurance carrier's claims office a Final Release and Settlement of Claim executed by Attorney L on behalf of Client in his capacity as Client's "representative." In connection therewith, Attorney L accepted, endorsed and deposited into his trust account a check from the insurance company payable to Attorney L and Client in the amount of $10,000.00. He then drew upon his that account a check in the sum of $6,606.16 as Client's share of the settlement proceeds as per the original Retainer-Power of Attorney and contrary to Client's instructions in Client's April, 1985, and May 9, 1985, letters.

B.
On April 22, 1987, the duly constituted Complaint Tribunal entered an Order setting trial upon the merits of the instant Formal Complaint for Tuesday, June 16, 1987, in Jackson, Mississippi. On April 28, 1987, MSB filed a Notice of Deposition Upon Oral Examination, noticing the taking of Attorney L's deposition. At the appointed time and place, Attorney L, together with his attorney of record, appeared pursuant to the deposition notice. MSB's attorney began the deposition by asking Attorney L certain background questions, including Attorney L's name, address and occupation, and then proceeded for almost 100 transcribed pages to ask Attorney L a wide-ranging variety of questions almost all of which were directly or indirectly related to the allegations of the Formal Complaint. Rather than answering, Attorney L responded to each and every question propounded to him, including when asked his name, address, law school attended and other innocuous questions, that he asserted his constitutional privilege against self-incrimination.
*121 On May 20, 1987, MSB moved for entry of an order compelling Attorney L to answer all of the questions previously propounded to him and further for an assessment of MSB's reasonable expenses incurred in obtaining said order compelling discovery and the taking of a subsequent deposition.
Following hearing thereon, the Presiding Judge for the Complaint Tribunal entered an order on June 3, 1987, directing that Attorney L present himself for the taking of a repeat deposition and imposing sanctions against Attorney L and his attorney of record for their nonmeritorious assertion of the Fifth Amendment.
Attorney L has now applied to this Court for relief from the Complaint Tribunal's order. By reason of the nature of the issues tendered, we have have stayed all proceedings before the Complaint Tribunal.

III.
Superficially, this matter appears in the nature of an interlocutory appeal. But this is not an appeal at all, for bar disciplinary proceedings are original actions before this Court. Where, as here, MSB's general counsel files a bar disciplinary complaint against an attorney, that complaint is filed here. See Rule 8(a), Rules of Discipline. Our order then constitutes a Complaint Tribunal and refers the matter to that Tribunal for hearing. Notwithstanding, we remain the ultimate authority for adjudication of the complaint and all matters incident thereto. See Rule 1(a), Rules of Discipline.
This case presents an appeal in the sense that the Complaint Tribunal has entered an order which, unless modified or reversed, must be complied with, upon pain of a contempt citation. Compare Rule 9, Rules of Discipline. We consult  but are not straight jacketed by  those considerations ordinarily governing our decision whether we would entertain an appeal prior to entry of final judgment in the court below.
Rarely will we entertain an interlocutory appeal regarding a discovery matter. Today's case is one of those rare ones, for Attorney L raises a question of privilege. More specifically, he has been ordered to disclose information he argues is protected from disclosure by no less a source than the Fifth Amendment. In this and other contexts, once information claimed to be privileged is disclosed, reversal on subsequent appeal following a final judgment would afford the party a victory hollow indeed. Compare American Tobacco Co. v. Evans, 508 So.2d 1057 (Miss. 1987).
Our decision to hear this matter is consistent with the criteria we have adopted to govern interlocutory appeals effective January 1, 1988, to-wit: that a substantial basis exists for difference of opinion on a question of law as to which appellate resolution may protect a party from substantial and irreparable injury, or resolve an issue of general importance in the administration of justice. See Rule 5(a), Miss.Sup.Ct.R., eff. Jan. 1, 1988. Moreover, our decision to hear this matter is not inconsistent with our present law regarding the subject. See, e.g., Sonford Products Corp. v. Freels, 495 So.2d 468, 471 (Miss. 1986); Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986); Southern Farm Bureau Casualty Ins. Co. v. Holland, 469 So.2d 55, 63 (Miss. 1984) (Anderson, J., concurring).
We do not understand MSB to complain in any way of our hearing the matter at this time. Rather, MSB's position, as we understand it, is that the matter should be heard and that Attorney L's application should be denied on its merits.

IV.
A threshold question concerns the applicability of the discovery rules of the Mississippi Rules of Civil Procedure, specifically including Rule 30. Attorney L argues that our Civil Rules have no effect, calling attention to our many cases in which we have observed that bar disciplinary matters are of a "quasi-criminal nature." See, e.g., Mississippi State Bar v. Young, 509 So.2d 210, 212 (Miss. 1987); Attorney K v. Mississippi State Bar Association, 491 So.2d 220, 222 (Miss. 1986); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983). The context of that statement has always been the consideration of *122 whether certain constitutional rights are available to the attorney. For example, we have made this statement en route to holding that attorneys who are accused in bar disciplinary matters have the right to due process of law. See Attorney K v. Mississippi State Bar Association, 491 So.2d 220, 222 (Miss. 1986); Myers v. Mississippi State Bar, 480 So.2d 1080, 1087 (Miss. 1985); Netterville v. Mississippi State Bar, 397 So.2d 878, 883-84 (Miss. 1981).
On the other hand, we have never held or even thought that bar disciplinary matters were so criminal in nature that Rules of Civil Procedure would be automatically excluded. Indeed, we have contemplated for years that such proceedings were within the scope of our Civil Rules, at least to a limited extent. See Rule 81(a)(2), Miss.R. Civ.P. In Vining v. Mississippi State Bar Association, 508 So.2d 1047 (Miss. 1987) we held that Rules 12 and 55, Miss.R.Civ.P., had application in a bar disciplinary proceeding.
The point needs clarification. Rule 81(a)(2), Miss.R.Civ.P., provides for limited applicability of the Civil Rules to "proceedings pertaining to the disciplining of an attorney." Ordinarily, limited applicability under Rule 81 contemplates certain specialized forms of action long regulated by statute. Rule 81 provides that the Civil Rules supplement the statutory rules of procedure, that is, to the extent that the statutory procedural scheme be silent, or not inconsistent, the Mississippi Rules of Civil Procedure govern. See, e.g., In re City of Ridgeland, 494 So.2d 348, 354 (Miss. 1986); Bias v. Bias, 493 So.2d 342, 343 n. 1 (Miss. 1986); First Mississippi National Bank v. KLH Industries, Inc., 457 So.2d 1333, 1336 (Miss. 1984).
At the time the Civil Rules became effective, January 1, 1982, bar disciplinary matters were considered to be governed by statute. See Miss. Code Ann. §§ 73-3-301, et seq. (Supp. 1982). Effective January 1, 1984, however, this Court asserted its exclusive and inherent jurisdiction of matters pertaining to attorney discipline, see An Attorney v. Mississippi State Bar Assn., 481 So.2d 297, 300 (Miss. 1985); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978), and promulgated rules of discipline for the Mississippi State Bar. See Rule 1(a), Rules of Discipline. In other words, those features of the bar disciplinary statutes "saved" by Rule 81(a)(2) have themselves been abrogated effective January 1, 1984, by the new Rules of Discipline.
The present state of the matter is this. All bar disciplinary matters are governed first and foremost by the Rules of Discipline for the Mississippi State Bar, effective January 1, 1984, together with all amendments thereto, subject only to the Constitutions of the State of Mississippi and of the United States of America. To the extent that they be not inconsistent with the Rules of Discipline, the Mississippi Rules of Civil Procedure shall govern bar disciplinary matters. See Vining v. Mississippi State Bar Association, supra. Where there is a conflict between a provision of the Rules of Discipline and a provision of the Civil Rules, the Rules of Discipline shall control.
Rule 2(a) of the Rules of Discipline articulates the power of disciplinary agencies to summons and examine witnesses under oath and to compel their attendance "or take or cause to be taken the deposition of witnesses," etc. Insofar as we can ascertain, there is no other provision in the Rules of Discipline referring to depositions. Accordingly, insofar as they may be applicable, the procedures contemplated by Rules 26-32 and 37, Miss.R.Civ.P., are available to either party in a bar disciplinary matter for the taking of depositions of parties or witnesses.

V.

A.
Substantively, Attorney L asserts that the matters, with respect to which MSB's general counsel sought to question him, could reasonably form the basis for criminal charges of mail fraud under 18 U.S.C.A. § 1341; false pretenses under Miss. Code Ann. §§ 97-19-35, and -39 (1972); and a charge of theft under the Louisiana Revised Statute 14:67. He claims he has *123 been vested with a right to refuse to answer these questions by U.S. Const.Amdts. 5 and 14. See also, Miss. Const. Art. 3, § 26 (1890). These rights, referred to hereinafter collectively as "the Fifth Amendment," are implicitly recognized in our civil discovery rules, as Rule 26(b)(1), Miss.R. Civ.P., provides:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. [Emphasis supplied]
Attorney L claims that the questions sought to be asked him pertain to matters privileged and are placed beyond discovery by Rule 26(b)(1).
Without doubt, a Fifth Amendment privilege would exist in bar disciplinary proceedings, even though there were no such limitation as is found in Rule 26(b)(1). See Mississippi State Bar v. Attorney-Respondent, 367 So.2d 179, 185 (Miss. 1979). Indeed, we regard it clear that the privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial investigatory or adjudicatory... ." Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212, 217 (1972). This is so though no criminal charges be pending against the attorney at the time. See, e.g., Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950).

B.
But what is the substantive content of Attorney L's Fifth Amendment privilege to the case at bar? The record before us reflects that Attorney L took the Fifth on every question he was asked at his deposition, including such innocuous questions as what was his name, where did he live, where did he go to law school, etc. The privilege against self-incrimination is not available to him on so blanket a basis as he asserts. See Mississippi State Bar v. Attorney-Respondent, 367 So.2d at 185. Unlike a pure criminal proceeding, the accused attorney has no right that his prosecutor will not question him at all. The Fifth Amendment is, however, available to Attorney L under a broad range of circumstances, for the Supreme Court of the United States has declared in Hoffman that
This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure. [citations omitted]
The privilege afforded not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute. .. . [citations omitted]
341 U.S. at 486, 71 S.Ct. at 818, 95 L.Ed. at 1124.
The Court then noted the limits of the right.
But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [citations omitted]
341 U.S. at 486, 71 S.Ct. at 818, 95 L.Ed. at 1124.
Beyond this Hoffman held that the court, not the witness, is the ultimate arbiter of whether the privilege may be claimed.
The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself  his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified... .
Hoffman continues:
However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result, 341 U.S. at 486-87, 71 S.Ct. at 818, 95 L.Ed. at 1124.
*124 In the end, Hoffman held that the trial court had authority to deny the privilege only where in its objective view of the questions tendered, "the answers cannot possibly have any such tendency to incriminate." 341 U.S. at 488, 95 L.Ed. at 1125.
The United States Court of Appeals for the Fifth Circuit has employed a two part test for determining whether a witness may refuse to answer on grounds of possible self-incrimination. See In re Corrugated Container Antitrust Litigation, 620 F.2d 1086 (5th Cir.1980), and In Re Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir.1979). First, the court must determine whether the answers to the question might reveal that the witness is engaged in criminal activity. The witness must answer if the answers could not be incriminatory. Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). Also, it need not be shown that the witness had clearly committed a crime, only that conceivably he has committed a crime. American Cyanamid Co. v. Sharff, 309 F.2d 790, 796 (3d Cir.1962). Second, if the answers might incriminate, the court must then determine whether there is even a remote risk that the witness will be prosecuted for the criminal activities. However, this determination does not depend on the judge's prediction of the likelihood of prosecution. Only if the possibility is "fanciful" will the privilege be denied. In Re Folding Carton Antitrust Litigation, 609 F.2d 867, 870 (7th Cir.1979). This standard has been labeled the "absolute bar" test in In Re Corrugated Container Antitrust Litigation, 661 F.2d 1145, 1151 (7th Cir.1981): Absent an absolute bar to subsequent prosecution, e.g., statute of limitations, or double jeopardy, "a judge's prediction as to the likelihood of a prosecutor filing an indictment is not dispositive in ascertaining the permissible scope of a claim of Fifth Amendment privilege."
Obviously, the determination of whether the privilege is valid cannot be based on the witness' mere assertion of his Fifth Amendment rights, and Hoffman so holds. "The witness must supply such additional statements under oath and other evidence which would enable the court to reasonably identify the nature of the criminal charge for which he feared prosecution." In Re Morganroth, 718 F.2d 161, 167 (6th Cir.1983).
The "burden of proof" varies with the facts of the case. For example, if the incriminating nature of the question is apparent from the nature of the setting, no further evidence is necessary. The Court in Morganroth, paraphrasing Chief Justice Marshall's classic statement in United States v. Burr, F.Cas. No. 14692E (1807 C.C.Va.) stated the rules thus way:
A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute. In Hoffman, the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call for innocent answers, are dangerous in light of other facts already developed. In such a situation a witness bears no further burden of establishing a reasonable cause to fear prosecution beyond asserting the privilege in identifying the nature of the criminal charge or supply sufficient facts so that a particular criminal charge can reasonably be identified by the court. The witness has met his burden and the court does not need to inquire further as to the validity of the assertion of the privilege, if it is evident from the implications of a question, in the setting in which it is asked, the responsive answer might be dangerous to the witness because an injurious disclosure could result. In appraising the claim, the court must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in existence.
Morganroth, 718 F.2d 167.
Thus, in a denaturalization proceeding, the witness was found to be justified in refusing to answer all questions after tendering only his name and address. United States v. De Lucia, 256 F.2d 493 *125 (7th Cir.1958). The same privilege was extended to a witness called to testify in a grand jury investigation of a robbery after others testified that the witness was the object of an FBI probe. Maffie v. United States, 209 F.2d 225 (1st Cir.1954). The Maffie Court found:
It is possible that a few of the questions which Maffie declined to answer could have been answered without any tendency to incriminate him; but if so, the answers to this small residue would have been so far removed from any disclosures possibly useful to the prosecution that it would have been a perfectly futile thing to order Maffie to go back to the grand jury to answer them. We would be reluctant to uphold a conviction for criminal contempt based upon a refusal to obey the District Court's order, so far as this insignificant residue is concerned; it would be too much like a case of the tail wagging the dog.
Maffie, 209 F.2d 231.
The Court states further that where the witness
may have reason to believe that he himself is under suspicion and that it will be the purpose of the interrogatory to worm out of him all the self-incriminatory disclosures possible. In that case, the situation of the witness approaches that of an accused person at a criminal trial, who may elect to keep silent altogether. The witness may be willing to answer certain formal preliminary inquiries, as to matters generally known, such as his name, residence, age, etc. But he may have a justified apprehension of danger in answering further. He may not have the acuteness to see what an innocuous looking question, put by a resourceful cross-examiner, is leading up to. Yet he might not be unreasonable in believing that the question was asked for a purpose, and that the purpose was to lead him into a booby trap in which he would make some disclosures useful to the prosecution in weaving a case against him. Just where the line should be drawn in such a case, in the application of a privilege, might be a question; but it is certainly clear that it should be drawn well short of the point where the interrogator might have a substantial chance of striking pay dirt.
Maffie, 209 F.2d 228-29.
In Gulf Oil Corp. v. Tug Kate Malloy, 291 F. Supp. 816 (D.C.La. 1968), a tug pilot deposed in a civil suit involving a crash between his tug and another was found to have a privilege extending even to his education, work experience and habits since "the lack of education, work experience or the possible presence of a habit such as the excessive use of intoxicating beverages might constitute negligence per se in assuming the control and operation of a vessel or constitute an important link to such evidence."

C.
Applying these guidelines to particular cases is necessarily difficult. Ordinarily, there are few clues we may order the party to provide, for most of what he might say that could assist judicial evaluation of the questions would itself be Fifth Amendment protected.
Here we are aided by the extensive allegations made in MSB's formal complaint. Without passing judgment on a matter not before us, we are confident that the allegations, if proved, would implicate Attorney L in the four criminal charges he has enumerated and as well several others the first year criminal law students might easily imagine. There is a reasonable probability that Attorney L has committed a crime. There is no way we may regard the risk of prosecution remote.
We hold that those questions propounded by MSB's general counsel directly or indirectly related to any aspect of the charges in the Formal Complaint are subject to Attorney L's Fifth Amendment privilege. Attorney L has invoked that privilege. The Complaint Tribunal erred when it held that Attorney L must nevertheless answer.
At the outset of the deposition Attorney L was asked a series of personal history questions, unrelated to the charges in the Formal Complaint. These were rather innocuous and should have been answered. As a practical matter, we doubt the utility *126 of resuming the deposition for discovery of such marginal value, although we are content to let MSB's general counsel be the judge of that.
In sum, the Order Compelling Discovery entered by the Complaint Tribunal on June 3, 1987, is vacated and held for naught, including but not limited to those provisions imposing sanctions upon Attorney L. We remand this matter to the Complaint Tribunal for further proceedings consistent with this opinion.
ORDER COMPELLING DISCOVERY VACATED; CASE REMANDED TO COMPLAINT TRIBUNAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] These allegations are wholly subject to proof at the proper time and place. They are recited here as they provide flesh to the context in which the Fifth Amendment issues arise.