# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00584-SCT

*WILLIAM DENTON BOUTWELL*

*v.*

*MICHELLE SEKUL BOUTWELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/13/2001 |
| TRIAL JUDGE: | HON. THOMAS WRIGHT TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ANGELA B. HEALY |
| | C. EVERETTE BOUTWELL |
| ATTORNEY FOR APPELLEE: | GAIL D. NICHOLSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED & REMANDED IN PART - 7/18/2002 |
| MOTION FOR REHEARING FILED: | 8/5/2002 |
| MANDATE ISSUED: | |

## BEFORE SMITH, P.J., DIAZ AND EASLEY, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. On September 28, 2000, Michelle Sekul Boutwell (Michelle) filed a complaint for divorce and temporary relief against William Denton Boutwell (Denton) in the Chancery Court of Harrison County, Second Judicial District. In the complaint, Michelle alleged the ground of habitual, cruel, and inhuman treatment or, in the alternative, irreconcilable differences. Michelle also asked for temporary relief including exclusive use and possession of the house and its contents, an order restraining Denton from harassment or interference with Michelle's "peace of mind, safety, and security of her property," and attorneys' fees and court costs.

¶2. On November 1, 2000, Denton filed an answer to the complaint for divorce asserting that Michelle had failed to state a claim upon which relief may be granted. After a hearing, the chancellor issued a temporary order granting neither party use of the home and enjoining both parties from "any harassing conduct toward a party, relative of the party, or an employer" or "any intrusive or interfering conduct with regard to the other party's workplace, home, or peace of mind."

¶3. On January 21, 2001, Denton filed a motion to amend pleadings to allow a counterclaim alleging that Denton is entitled to a divorce on the ground of adultery, or, in the alternative, irreconcilable differences, or, in the alternative, habitual, cruel and inhuman treatment. Denton also asked for rehabilitative, transitional, periodic and lump sum alimony, exclusive use of the home, attorneys' fees and court costs, and satisfaction of all marital debts. On February 15, 2001, the chancellor granted that motion and, on February 26, 2001, Denton filed the counterclaim.

¶4. On March 2, 2001, Michelle filed an answer to Denton's counterclaim for divorce admitting she had sexual intercourse with another man after she and Denton separated and admitting irreconcilable differences, but denying Denton was entitled to a divorce on the ground of habitual, cruel and inhuman treatment.

¶5. On February 19, 2001, Michelle filed a motion for an order granting adverse inference due to Denton's discovery abuse alleging that Denton refused to provide medical authorizations and evaded deposition. On March 1, 2001, Denton filed an answer to Michelle's motion for an order granting adverse inference due to Denton's discovery abuse alleging that Michelle did not specify time frames for the alleged discovery abuse and that Michelle could have deposed anyone in connection to the information sought under the Mississippi Rules of Civil Procedure.

¶6. On March 1, 2001, Denton filed a motion to compel Michelle to answer deposition questions concerning her alleged adultery, who consumed alcohol in the marital home, and "other illegal activities."

¶7. A hearing was held on March 5-6, 2001, upon the divorce complaints of the parties. On March 13, 2001, the chancellor issued his judgment granting Michelle a divorce from Denton on the grounds of habitual, cruel and inhuman treatment. The chancellor divided the property as follows: Michelle was granted the home, her vehicle, items listed in Exhibit 3 and 13 as hers, items noted as being purchased by mortgage monies, certain pieces of furniture, half the contents of the kitchen cabinets, half the pewter accessories and other wedding gifts, the Walter Anderson alligator print, the mortgage on the lot she inherited from her grandfather, her personal belongings and her retirement. Denton was granted his Jeep, items listed in Exhibits 3 and 13 as his, the Walter Anderson crab print, the VCR, the Globe, half of the contents of the kitchen cabinets, half of the pewter accessories and other wedding gifts, his personal belongings, his 401(k) and his tools.

¶8. As far as the debts were concerned, Michelle was granted the entire $90,000 home mortgage debt, any debts on her car, and any debts listed in her name alone. Denton was granted any debt on his Jeep, and any debts listed in his name alone. On April 9, 2001, Denton filed his notice of appeal to this Court.

## FACTS

¶9. Denton and Michelle married on May 9, 1998. Prior to the marriage, Michelle's grandfather had passed away leaving her his house and the mortgage for an adjacent lot at $300 a month. Michelle actually acquired title to this property after the marriage. The original value of the house was appraised at $108,000. Michelle and Denton borrowed $90,000 in Denton's name to make improvements on the house. Some portion of that money was used for home repairs, and the rest was unaccounted for. Both Denton and Michelle worked on the house, but they disagree as to the degree that each contributed to the house renovation.

¶10. At the time of the divorce, Denton was thirty years old and employed at Mississippi Phosphate in Pascagoula, Mississippi and Michelle was twenty-eight years old and employed at the Mississippi Gulf Coast Community College, Perkinston Campus as a recruitment officer. Both parties lived with their parents at the time of their divorce.

¶11. The chancellor found that both parties had proved their alleged grounds for divorce. Michelle admitted at trial that she had a sexual relationship with another man after she and Denton separated. Regarding Michelle's alleged ground for divorce, habitual, cruel and inhuman treatment, the chancellor found the following:

> Denton appears to have an alcohol and prescription drug problem. He noted five doctors in his deposition, but has prescription records from seventeen doctors. He has pages of prescriptions during the two year marriage, including prescriptions for xanax, cenicon, remoran, zoloft, paxil, prozac zerzone, ambien buspar, and elevil. Although Denton maintained that he didn't fill all these prescriptions and some were taken in relation to his seizure disorder, Michelle, and other witnesses noted behavior related to abuse of medication and alcohol, including: an incident of road rage (threatening and waving a gun while driving and drinking); an arrest at a casino; the taking of medication at his in-law's home; frequent yelling and humiliating Michelle in front of family, friends, and students; and, the incident at their home when they separated. [In explanation of that incident] Michelle stated that she found a plastic bag with around ninety xanax in his [Denton's] coat pocket and, when confronted, he stated he was having a friend, Ron Gronski, get rid of it for him. Michelle took this to mean he was selling his prescription drugs. Thereafter, Michelle no longer wanted to continue the marriage and discussed divorce with him. He got angry and began to tear up the deck and retaining wall. Michelle left the home that night.

> Additionally, Michelle related other facts relating to her grounds. First, he [Denton] accused her of having an affair with someone at the Perkinston campus before the separation; and, after her alleged adulterous weekend, told friends and students that she was a whore. Second, he would not quit using marijuana, and stated he would quit if she got pregnant. Third, he frequently threatened to divorce her during arguments.

> *

> . . . . Denton apparently defied the November 10, 2000 temporary order by following Michelle to Mobile, harassing her in her car, and then following her into a shopping mall where she had to seek the help of mall security.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN AWARDING THE MICHELLE A DIVORCE ON THE GROUND OF HABITUAL, CRUEL AND INHUMAN TREATMENT.

¶12. Denton argues that the chancellor abused his discretion by granting Michelle a divorce on the ground of habitual, cruel and inhuman treatment because he relied on the "self serving" testimony of Michelle and her witnesses, including her mother. Denton also argues that Michelle did not meet the burden of proof to establish the ground of habitual, cruel and inhuman treatment, citing *Smith v. Smith*, 614 So.2d 394, 396

(Miss. 1993)(holding that something more than unkindness or rudeness or mere incompatibility or want of affections must be proved by the preponderance of the evidence).

¶13. Under our standard of review, we view the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancellor's decision unless we find that decision to be manifestly wrong or unsupported by substantial evidence. *Mullins v. Ratcliff*, 515 So.2d 1183, 1189 (Miss.1987). Therefore, we employ this standard in looking at the evidence in this case.

¶14. Evidence of habitual cruel and inhuman treatment is sufficient if it shows conduct that endangers life, limb or health or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, if the conduct is so unnatural and infamous as to make the marriage revolting to the offended spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance. This Court has consistently held that the chancellor as the trier of fact evaluates the sufficiency of the proof based on the credibility of the witnesses and the weight of their testimony. *Richard v. Richard*, 711 So.2d 884, 888(¶13) (Miss.1998). The burden of proof in a habitual cruel and inhuman treatment case is a preponderance of evidence, not clear and convincing. *Daigle v. Daigle*, 626 So.2d 140, 144 (Miss.1993). As a general rule, the habitual cruel and inhuman treatment must be shown to be routine and continuous; however, a single occurrence may be grounds for a divorce on this ground. *Robinson v. Robinson*, 554 So.2d 300, 303 (Miss.1989); *McKee v. Flynt*, 630 So.2d 44, 48 (Miss.1993); *Ellzey v. Ellzey*, 253 So.2d 249, 250 (Miss.1971).

¶15. Based on a review of the evidence adduced at trial, we find that the chancellor did not commit manifest error in awarding Michelle a divorce on the ground of habitual, cruel and inhuman treatment. As the chancellor found in his opinion, Denton appears to have a prescription drug problem. Witnesses at trial also testified as to different instances Denton has appeared to have a drug or alcohol abuse problem such as an incident of road rage, an arrest at a casino, taking medication in his in-laws' home, and frequent yelling at and humiliating Michelle in front of family, friends and students. Michelle also testified that she found a bag of approximately ninety xanax pills and when she asked Denton about it, he told her he was going to have a friend sell them. When Michelle broached the subject of divorce with Denton, he became so enraged that he tore up the deck and retaining wall at their house. Denton also accused Michelle of having an affair before their separation and told friends and students that she was a "whore." Denton also continued to use marijuana and repeatedly threatened to divorce Michelle.

¶16. Again, it is the chancellor who hears the testimony and sees the demeanor of the witnesses. Here, the chancellor found Michelle to be more believable, "Denton's demeanor, attitude and responsiveness during examination did not make him believable." As such, we affirm the chancellor as to this issue.

### II. WHETHER THE TRIAL COURT ERRED IN ITS REFUSAL TO CLASSIFY THE MARITAL HOME AND A PROMISSORY NOTE AS MARITAL PROPERTY AND TO AWARD DENTON AN EQUITABLE INTEREST IN SAME.

¶17. Denton argues that the chancellor erred in finding the house and the income received from the promissory note on the lot next door to the house to be non-marital property. Michelle inherited the house and promissory note from her grandfather before the marriage, but did not gain title to either until after the marriage. Michelle and Denton lived in the house during their marriage and applied the income from the promissory note to the mortgage note on the property every month during their marriage.

¶18. In dividing the property, the chancellor did not make an on-the-record analysis as outlined in *Ferguson v. Ferguson*, 639 So.2d 921, 929 (Miss. 1994). This Court has held that the failure to make such findings is an abuse of discretion that requires reversal and remand. *Heigle v. Heigle*, 771 So.2d 341, 346-47 (Miss. 2000); *Kilpatrick v. Kilpatrick*, 732 So.2d 876, 881 (Miss. 1999); *Baker v. Baker*, 807 So.2d 476, 478 (Miss. Ct. App. 2001). However, we find that this case warrants a review of this issue on the merits.

¶19. When attempting to equitably divide property at issue in a divorce, the chancellor should first classify the parties' assets as marital or non-marital based on *Hemsley v. Hemsley*, 639 So.2d 909 (Miss. 1994). Marital property can be defined as that which was acquired during the course of the marriage. *Waring v. Waring*, 747 So.2d 252, 255 (Miss. 1999). Property brought into the marriage by one partner and used by the family becomes a marital asset. *Johnson v. Johnson*, 650 So.2d 1281, 1286 (Miss. 1994).

¶20. Assets which are classified as non-marital, such as inheritances, may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary. *Heigle v. Heigle*, 654 So.2d 895, 897 (Miss. 1995); *Johnson*, 650 So.2d at 1286. Commingled property is a combination of marital and non-marital property in which the non-marital property has lost its status as non-marital property by virtue of its being combined with the marital property. *Maslowski v. Maslowski*, 655 So.2d 18, 20 (Miss.1995).

¶21. The house Michelle inherited from her grandfather was "the marital home" and should be considered marital property. Both Michelle and Denton worked on the house and lived in it during their marriage.

¶22. Also, the income from the promissory note on the lot next door became marital property when it was used to pay the mortgage on the marital home. The chancellor did not err, however, in finding that any post-marital income from the promissory note was separate property, since such income has been neither commingled nor used for marital purposes.

¶23. The chancellor erred in finding that the house was not marital property and in finding the promissory-note income applied to the mortgage to be separate income, and therefore erred in finding that Denton was only entitled to an interest in the improved value of the house after all the work he and Michelle did on the house.

¶24. After the property has been determined marital or non-marital, the chancellor should next analyze the case according to the factors found in *Ferguson*. They are as follows:

1. Substantial contribution to the accumulation of property

a. direct or indirect economic contribution

b. contribution to stability and harmony of the marital relationship measured by quality, quantity of time spent on family duties and duration of marriage.

c. contribution to the education, training bearing on the earning capacity of spouse accumulating assets.

2. Degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of assets.

3. Market value and emotional value of assets subject to distribution.

4. Value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse.

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.

6. Extent to which property division may be utilized to eliminate periodic payments and other potential sources of friction.

7. Needs of the parties.

8. Any other factor which in equity should be considered.

*Ferguson,* 639 So.2d at 928.

¶25. Under the first factor, both Denton and Michelle contributed to the household expenses, although it may be argued that Michelle contributed more because Denton's employment was unsteady the last year they were married. Also, as previously mentioned, Denton contributed significantly to the decline of the marriage through his prescription drug abuse and resulting behavior.

¶26. Under the second, third, fifth, sixth, seventh and eighth factors, there is insufficient evidence to make proper findings in this case. Under the fourth factor, neither party seems to have any remarkable separate property.

¶27. In light of the fact that the chancellor erred in determining what is marital property, he also erred in distributing that property and made no on-the-record findings according to *Ferguson*. Accordingly, this case is reversed and remanded for a determination of the equitable division of the property.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING DENTON'S MOTION TO COMPEL MICHELLE TO RECONVENE HER DEPOSITION AND TO REQUIRE HER TO ANSWER SUBSTANTIVE QUESTIONS CRITICAL TO DENTON'S CASE THAT SHE PREVIOUSLY REFUSED TO ANSWER.

¶28. In her February 21, 2001 deposition, Michelle admitted to having a sexual relationship while she was still married to Denton, but refused to give any details about the affair such as who the man was, when it occurred, or what marital assets were "dissipated" as a result of the affair. Michelle also refused to answer questions regarding alleged illegal activities occurring in the marital residence, such as hosting parties for underage students and allowing them to drink alcohol. Denton filed a motion to compel Michelle to reconvene the deposition on March 1, 2001, and trial began on March 5, 2001. Denton brought this matter up to the court the morning of trial and asked for a continuance. The chancellor decided to deny the motions and, instead, gave Denton's attorney more "leeway" at trial when questioning the witnesses.

¶29. Denton cites no authority in support of this issue. Failure to cite authority in support of claims of error preludes this Court from considering the specific claim on appeal. *Pickering v. Indus. Masina I Traktora*, 740 So.2d 836, 848 (Miss. 1999). Nevertheless, we will review the merits of this issue.

¶30. This Court may only reverse the trial judge's ruling regarding discovery if it finds that there has been an abuse of discretion. ***Harkins v. Paschall***, 348 So.2d 1019, 1022 (Miss.1977); ***Warren v. Sandoz Pharms. Corp.***, 783 So.2d 735, 738 (Miss. Ct. App. 2001). Therefore, this Court will apply the abuse of discretion standard of review when addressing the issues of whether the trial judge was in error regarding the denial of the motion to compel and whether there were discovery violations that warranted the imposition of sanctions.

¶31. Michelle asserts that the motion to compel was untimely. Denton filed the motion to compel on Thursday, March 1, 2001 and trial began on Monday, March 5, 2001. Miss. R. of Civ. P. 37 provides that "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery . . ." Less than two business days before the trial was scheduled is not "reasonable" notice in the instant case.

¶32. Furthermore, the chancellor allowed leniency in regard to Denton's examination of Michelle. The fact that Michelle did answer questions at trial that she refused to answer in her deposition rendered any error the chancellor committed in denying the motion to compel harmless.

### IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE AN APPRAISAL OF THE MARITAL RESIDENCE THAT WAS NOT TIMELY PRODUCED IN DISCOVERY.

¶33. Denton argues that the trial court erred in admitting into evidence an appraisal "submitted by Michelle two days prior to trial, even though the document was requested through discovery three months prior in December of 2000." Again, Denton cites no authority in support of this issue. Failure to cite authority in support of claims of error preludes this Court from considering the specific claim on appeal. ***Pickering***, 740 So.2d at 848.

¶34. As Michelle points out in her brief, she conceded to whatever appraisal was offered by Denton. It is unclear from the briefs of the parties or the record as to whose appraisal was used. As we have already decided to remand this case under the issue of equitable distribution, we now further instruct the trial court to clarify this issue of the value of the house on remand.

### V. WHETHER THE TRIAL COURT ERRED IN ITS REFUSAL TO GRANT AUTHORITY TO PERFECT AN INTERLOCUTORY APPEAL OF THE TRIAL COURT'S DENIAL OF DENTON'S MOTION TO COMPEL DISCOVERY.

¶35. Denton argues that the trial court erred in not allowing him to perfect an interlocutory appeal after his motion to compel Michelle to reconvene her deposition was denied. Denton first moved the trial court to grant him authority to perfect an interlocutory appeal before trial started. The chancellor reserved its consideration of that motion until the conclusion of trial. Then, at the end of trial, Denton again made the motion and was denied.

¶36. Permissive interlocutory appeals are governed by M.R.A.P. 5.:

> a) Petition for Permission to Appeal. An appeal from an interlocutory order may be sought if the order grants or denies certification by the trial court that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:

(1) Materially advance the termination of the litigation and avoid exceptional expense to the parties; or

(2) Protect a party from substantial and irreparable injury; or

(3) Resolve an issue of general importance in the administration of justice.

¶37. In *Haynes v. Anderson*, 597 So.2d 615, 617 (Miss. 1992), the Court found that, as a general rule,

this Court has declared that it "is not about to become involved in the wholesale granting of interlocutory appeals of civil discovery disputes. Pre-trial discovery is governed by flexible rules well within the administrative capacity of our trial courts." *In re Knapp*, 536 So.2d 1330, 1333 (Miss.1988); *Mississippi State Bar v. Attorney L*, 511 So.2d 119, 121 (Miss.1987) ("Rarely will we entertain an interlocutory appeal regarding a discovery matter.")

A limited exception has been carved out for "substantial questions of privilege ... where correction of any error on appeal from a final judgment would be futile." *Knapp*, 536 So.2d at 1333. . . .

¶38. Under Issue III, we found that the chancellor cured any error that may have occurred when he allowed Denton leniency in questioning Michelle at trial. Therefore, the chancellor's denial of Denton's motion to compel did not warrant an interlocutory appeal.

### VI. WHETHER THE TRIAL COURT ERRED IN DENYING DENTON A DIVORCE ON THE GROUND OF ADULTERY.

¶39. Finally, Denton argues that he proved that Michelle committed adultery and he should have been granted a divorce on that ground because it was the adultery that was the true cause of the marriage ending.

¶40. In *Sproles v. Sproles*, 782 So.2d 742, 746 (Miss. 2001), this Court was presented with a similar issue. There, the chancellor granted the wife a divorce on the grounds of habitual drunkenness and habitual, cruel and inhuman treatment instead of granting the husband a divorce on the ground of adultery even though he proved that ground. The Court specifically found that "[t]here is ample proof that it was Thomas's conduct that caused the dissolution of the marriage and that Teresa was entitled to a divorce on the grounds of cruel and inhuman treatment and habitual drunkenness." *Id*. at 747.

¶41. The chancellor followed this theory of law as reflected in his opinion citing *Garriga v. Garriga*, 770 So.2d 978 (Miss. Ct. App. 2000)(holding that there can only be one divorce granted and the chancellor must determine which of the parties will be granted the divorce by determining which party's conduct was the cause of the deterioration of the marital relationship). The chancellor went on to find that both parties had proved a ground for divorce, but that Denton's prescription drug problem and resulting behavior is what led to the decline of the marriage, not Michelle's adultery which occurred after the separation.

¶42. On this record, we find that the chancellor did not commit reversible error in granting Michelle a divorce on the ground of habitual, cruel and inhuman treatment.

### CONCLUSION

¶43. Because the chancellor erred in his determination of which property was marital property, we reverse the chancellor's distribution of marital property, and we remand this case for a proper identification, valuation, and equitable distribution of marital property consistent with this opinion. In all other respects, we

affirm the judgment below.

¶44. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART**.

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**