536 So.2d 1330 (1988)
In re Gary A. KNAPP, Petitioner.
No. M-2654.
Supreme Court of Mississippi.
December 14, 1988.
*1331 Dan W. Webb, Shuttleworth, Smith & Webb, Tupelo, for appellant.
John R. Reeves, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.

I.
ROBERTSON, Justice, for the Court:
Against the backdrop of soap operaish facts, a pastor, charged with indiscretions  and potentially much more  seeks extraordinary relief. He has been ordered jailed for refusal to answer at a deposition in a tort action in which he is the defendant. Eschewing the priest-penitent privilege, the pastor seeks higher authority and invokes the Fifth Amendment.
We hold that the pastor does indeed enjoy a constitutional privilege against self-incrimination which he may invoke in the proceedings below. That privilege is not so blanket as he has asserted. With an explanation we hope will be helpful, we deny the extraordinary writ.

II.

A.
Laura Muse Hutchins was last seen alive in early December, 1987, at her home in Jackson, Mississippi. Forty-one days later on January 26, 1988, Laura's body was found in the Pearl River near the Simpson-Copiah County line. The circumstances suggested homicide and immediately attracted great public attention. The Hinds County Grand Jury was convened to consider the matter but insofar as we have been made aware no indictment has been returned.
On October 21, 1987, prior to these happenings, Michael Lee Hutchins had brought a civil action in the Circuit Court of the *1332 First Judicial District of Hinds County, Mississippi. Hutchins' complaint named as defendant Gary A. Knapp. Before answer Hutchins filed an amended complaint. See Rule 15(a), Miss.R.Civ.P. Hutchins' suit sounds in tort and charges Knapp with alienation of Laura's affections from him and with criminal conversation. The complaint further charges that at all relevant times Knapp was pastor of the Griffith Memorial Baptist Church in Jackson, of which Hutchins was a member. Hutchins alleges that he sought marital counseling services of and from Knapp and that Knapp in fact undertook to render such services at times when he was "simultaneously engaging in, or had engaged in an amorous affair with Laura Hutchins, wife of the plaintiff." The complaint sounds like a charge of professional malpractice as a marriage counselor.
On January 21, 1988, Knapp answered and asserted several defenses in law. Beyond that, Knapp denied the essential allegations of the complaint and alleged affirmatively that the alienation of Laura's affections from Hutchins were the result of Hutchins' own "mistreatment of his wife." Knapp alleged "that actions of Laura Hutchins toward him, if any, were voluntary." Significantly, in Paragraph VI of his answer, Knapp alleged.
Upon information and belief, the defendant [Knapp] affirmatively alleges that the plaintiff [Hutchins] has either personally procured or aided in procuring the disappearance of Laura Hutchins, the plaintiff's wife who has knowledge of relevant information related to these accusations in the complaint. Therefore, the plaintiff has procured the absence of a material witness to this action and obstructed the processes of this Court and, as such, this action should be barred.
Five days later Laura's body was recovered from the Pearl River. Great and furious pre-trial litigation has ensued the center-piece of which has been Knapp's efforts to avoid discovery via his constitutional privilege against self-incrimination. Two other points have been vigorously debated: whether Knapp could be required to testify regarding matters which he may have presented to the Hinds County Grand Jury and, whether Knapp, a resident of Orange Park, Florida, may be compelled at his own expense to submit to deposition in the State of Mississippi.[1]
On January 30, 1988, Hutchins gave notice of the taking of Knapp's deposition in Hinds County, Mississippi. Several days thereafter, Knapp moved for a protective order asserting that he could not be compelled to attend a deposition in Hinds County unless Hutchins tendered to him the reasonable cost of transportation and lodging incident to his appearance in Jackson.
Hutchins originally propounded requests for admissions[2] and interrogatories[3] which sought in substantial part to discover the basis for the denials and allegations made in Knapp's answer. Hutchins deemed Knapp's responses inadequate and moved to compel discovery under Rule 37, Miss.R. Civ.P., and for sanctions. On March 1, 1988, the Circuit Court ordered further supplementation of answers to nine interrogations but denied Hutchins' motion for sanctions.[4] Significantly, the Court in the same order denied Knapp's motion for a protective order and directed that Knapp
shall, upon proper notice, submit to a deposition in the First Judicial District of Hinds County, Mississippi.
*1333 On the morning of July 21, 1988, Knapp appeared in Jackson at the office of Hutchins' counsel for deposition. After a brief but acrimonious exchange between counsel, the parties and counsel retired to the Circuit Court for the proceedings that have given rise to today's application. Before the Circuit Court Knapp again pleaded his privilege against self-incrimination and his perceived statutory obligation not to discuss matters presented to the Hinds County Grand Jury. Following extensive arguments by counsel, Knapp took the witness stand in open court. After a few preliminary questions, counsel for Hutchins asked
Q. Mr. Knapp, did you testify before the Hinds County Grand Jury in 1988 for any purpose?
A. Upon advice of counsel, I invoke the Fifth Amendment.
The Circuit Court then directed Knapp
to answer the question with regard to whether or not you testified before the grand jury.
Knapp refused, whereupon the Circuit Court held him in contempt and ordered him committed to the custody of the Sheriff of Hinds County.
On the same day, July 21, 1988, Knapp filed with this Court his petition for extraordinary writ, for stay and for stay of execution of order of civil contempt. We ordered Knapp released from custody pending our consideration and decision of the issues presented in his petition.

III.
This Court is not about to become involved in the wholesale granting of interlocutory appeals of civil discovery disputes. Pre-trial discovery is governed by flexible rules well within the administrative capacities of our trial courts.
We have carved out a limited exception to this general principle for substantial questions of privilege, that is, for cases where correction of any error on appeal from a final judgment would be futile. If the matter thought privileged is ordered disclosed and is in fact disclosed, our later reversal would found on the Humpty Dumpty syndrome.[5]See Mississippi State Bar v. Attorney L, 511 So.2d 119 (Miss. 1987); American Tobacco Co. v. Evans, 508 So.2d 1057 (Miss. 1987).
We address on the merits two questions: Knapp's claim of his privilege against self-incrimination and his argument that he is prohibited by law from disclosing the content of grand jury proceedings. His points regarding where he may be deposed and who must pay, the trial court's ordering of discovery, summary judgment and other pre-trial proceedings, and his claim of "unequal access to the lower court", are of the sort we will not give the time of day when presented interlocutorily, though nothing said here should be seen as intimation of a view how these points ought be resolved if presented on appeal from a final judgment.

IV.

A.
We begin with the chapter on Depositions and Discovery in the Mississippi Rules of Civil Procedure. Rule 26(b)(1) provides that
parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. [emphasis supplied]
Knapp makes no claim of lack of relevance. Instead, he says he has a privilege. He invokes generally his constitutionally secured privilege against self-incrimination.[6] *1334 Second, and more specifically, Knapp points to a statutory provision that witnesses before a grand jury may not disclose what transpired before the grand jury subject to certain time limitations.[7]
Both federal and state varieties of the privilege against self-incrimination are available to witnesses in proceedings civil as well as criminal. Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296, 303-04 (1986); Lefkowski v. Cunningham, 431 U.S. 801, 804-05, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 6-7 (1977); Mississippi State Bar v. Attorney L, 511 So.2d 119 (Miss. 1987); Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820 (Miss. 1969). The privilege is among those contemplated by Rule 26(b)(1) when that rule provides that parties may obtain discovery of relevant matters "not privileged". Mississippi State Bar v. Attorney L, 511 So.2d at 123.
In a criminal prosecution the privilege provides that an individual may not be required to take the witness stand at all. Mississippi State Bar v. Attorney L, 511 So.2d at 123; Morgan v. United State Fidelity & Guaranty Co., 222 So.2d at 828. But this is because of the practical reality of juror prejudice and misunderstanding should the individual have to invoke his privilege on a question by question basis. Experience and common sense have taught that the only way the privilege may in fact be secured in a criminal prosecution is that the accused have the right, if he wishes to exercise it, not to take the witness stand at all. Such considerations have no application in civil proceedings, particularly where, as here, a party is merely being required to submit to deposition. Here we do proceed on a question by question basis.
An analogous question was before the Court in the Attorney L case. In Attorney L we first held that whether the answer to a question had self-incrimination potential was a judicial question to be answered according to an objective test. See Wright v. McAdory, 536 So.2d 897, 904 (Miss. 1988). We recognized the difficulties in Fifth Amendment adjudications citing Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) where the Court said
If the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee.
Hoffman, 341 U.S. at 486-87, 71 S.Ct. at 818, 95 L.Ed. at 1124; Mississippi State Bar v. Attorney L, 511 So.2d at 123.
There is no necessity that we repeat all that was said in Attorney L. We emphasize, however, the two-step process for determining claims of the privilege.
First, the Court must determine whether the answers to the question might reveal that the witness is engaged in criminal activity. The witness must answer if the answer could not be incriminatory ... Also it need not be shown that the witness has clearly committed a crime, only that conceivably he has committed a crime... . Second, if the answers might incriminate, the court must then determine whether there is even a remote risk that the witness will be prosecuted for the criminal activities. However, this determination does not depend on the judge's prediction of the likelihood of prosecution. Only if the possibility is "fanciful" will the privilege be denied.
Mississippi State Bar v. Attorney L, 511 So.2d at 124; see also Wright v. McAdory, supra.
Petitioner Knapp suggests four criminal offenses relating to Laura Muse Hutchins and says he might conceivably be charged with any or all. These are murder,[8] and the lesser offense of manslaughter,[9] *1335 kidnapping,[10] and adultery.[11] The facts before us reflect that in October of 1987, Hutchins sued Knapp for alienation of affections, criminal conversation and the like. In December of 1987, Laura Hutchins mysteriously disappeared and forty-one days later was found dead in the Pearl River under facts suggesting homicide. Common sense and these facts are sufficient to undergird a holding in the light of these facts that Gary A. Knapp is a possible suspect of the crimes of murder, manslaughter or kidnapping. These are offenses for which Knapp may reasonably expect that he may be investigated and charged.
Adultery is a criminal offense in this state, notwithstanding the Circuit Court's exclamation that it had heard of no prosecutions therefor in the past twenty years. The allegations of Hutchins' complaint are more than sufficient to establish that Knapp may be prosecuted for that offense. The suggestions in Attorney L that the privilege will be denied only where the possibility of prosecution is "fanciful" refers to the possibility of conviction in the event a prosecution is mounted, not to the possibility of prosecution in the first place. Today's case is legally analogous to Spradlin v. Spradlin, 426 So.2d 462, 463 (Ala. 1983), a civil divorce proceeding in Alabama, where the court held that the husband's alleged paramour may of right invoke her privilege against self-incrimination when questioned regarding her amorous relationship with plaintiff's husband. Hutchins' suggestion that there is a legally relevant difference between the divorce action in Spradlin and the present tort action is an apt example of what is fanciful.
These points made, our role becomes limited, our attitude cautious. Hutchins has the right to depose Knapp. Knapp enjoys a privilege against self-incrimination at that deposition. He may of right exercise that privilege in the context of each of the four possible criminal charges listed above. Still, Knapp has no blanket right to remain silent such as that he asserts.

B.
We turn now to Knapp's specific claim that he is prohibited from testifying by Section 97-9-53. Knapp concedes that he has appeared before the Hinds County Grand Jury in the course of its investigation of the death of Laura Hutchins. The statute in relevant part prohibits any witness before a grand jury from disclosing "any action or proceeding had" before the grand jury "before the finding of the indictment, or in six months thereafter." Since no indictment has been returned, the bar of the statute is in effect.
In the proceedings in Circuit Court on July 21, 1988, Knapp refused to state whether he had been a witness before the grand jury. Technically, this would be a matter precluded by the statute. His appearance before the grand jury would be "an action or proceeding". Of more substantive concern might be the testimony, if any, Knapp gave to the grand jury.
We have read the statute carefully and cannot fathom that it allows Knapp to reveal what he said before the grand jury  at least, until expiration of the time limitation therein. But this does not mean Knapp may not be questioned in a separate proceeding and required to answer where the questions overlap or even duplicate what he was asked before the grand jury.
Section 97-9-53 prohibits Knapp from stating to anyone "I appeared before the grand jury and told the grand jury that...." By way of contrast, Knapp is not precluded or protected from answering questions on deposition or elsewhere where those questions duplicate or relate to the subject matter of what occurred before the grand jury. Cf. Lewis v. State, 137 Miss. 70, 71, 96 So. 737 (1923). If Knapp answers such an independently asked question and if he is then asked "Is that consistent (or inconsistent) with what you told the grand jury?", Section 97-9-53 again requires that he remain silent. More specifically, *1336 Section 97-9-53 precludes inquiry into what Knapp may or may not have told the grand jury for purposes of Hutchins' pursuit of his claim that Knapp has waived his privilege against self-incrimination, a matter to which we now turn.

C.
In his brief before this Court, Hutchins vigorously asserts that Knapp has waived any privilege against self-incrimination he may otherwise have enjoyed in the premises. The matter is presented only sketchily in the record before us and hence is not susceptible of definitive appellate adjudication. The course of proceedings before us, however, suggest strongly that we offer such guidance as we can within the context of the points and authorities tendered by counsel.
In the first place, Knapp certainly has not waived his privilege against self-incrimination by filing an answer in the civil action commenced by Hutchins. Knapp did not bring this lawsuit. He was sued. He answered on pain of default if he failed. This was hardly a voluntary relinquishment of his privilege against self-incrimination.[12]
Second, Knapp has not waived his privilege against self-incrimination by anything he has said in any other proceeding. So long as he has done nothing in connection with the civil action pending in the Circuit Court of Hinds County to waive the privilege, he enjoys it there fully and effectively. If in other proceedings Knapp has made statements or given testimony which would have been privileged had he chosen to invoke his privilege, that testimony may be used in the present proceedings, subject to the Rules of Evidence, notwithstanding his claim of the privilege here. See Reed v. State, 523 So.2d 62 (Miss. 1988). But the fact of a waiver of the privilege in one proceeding is limited to a waiver for that proceeding and that proceeding only.

V.
The Petition for Extraordinary Writ insofar as it is predicated upon the issues discussed in Part IV above is denied. On all other issues, Petitioner's application for extraordinary writ under Rule 21, Miss.Sup. Ct.Rules, which we have alternatively considered under Rule 5, Miss.Sup.Ct.Rules, is denied without prejudice to his right to present those issues anew on appeal from any final judgment herein.
The order for stay entered by this Court on July 21, 1988, shall stand dissolved on the fifteenth day following issuance of the mandate.
PETITION FOR EXTRAORDINARY WRIT AND INTERLOCUTORY APPEAL DENIED; ORDER FOR STAY VACATED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., not participating.
NOTES
[1] Knapp was served with process under our longarm statute, Miss. Code Ann. §§ 13-3-57 (1972); Rule 4, Miss.R.Civ.P.; see Camp v. Roberts, 462 So.2d 726, 727 (Miss. 1985).
[2] See Rule 36, Miss.R.Civ.P.
[3] See Rule 33, Miss.R.Civ.P.
[4] It appears in the interim that Knapp had filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division. On June 16, 1988, however, the U.S. Bankruptcy Court entered an order lifting the automatic stay of 11 U.S.C. § 362(a) to permit the Hinds County action to proceed provided that, in the event Hutchins obtained a judgment, he would seek no recovery over and above any available insurance coverage. The stay being lifted, the Circuit Court on June 24, 1988, again ordered that Knapp submit to an oral deposition in Hinds County, Mississippi.
[5] Beyond that, neither this Court nor anyone else has authority to suspend availability of the writ of habeas corpus where as here the interlocutory discovery order has placed a party in jail. Miss. Const. Art. 3 (1890).
[6] Persons in this state enjoy a privilege against self-incrimination by virtue of two independent rules of positive constitutional law. The first of these is the Fifth Amendment to the Constitution of the United States, made enforceable against the State of Mississippi by the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6-11, 84 S.Ct. 1489, 1492-95, 12 L.Ed.2d 653, 658-61 (1964). The second is found in Article 3, § 26 of the Mississippi Constitution of 1890. For convenience references hereafter to "the Fifth Amendment" include both.
[7] Miss. Code Ann. § 97-9-53 (1972) provides as follows:

If a ... witness ... discloses ... any action or proceeding had in relation ... [to an indictment], before the finding of the indictment, or in six months thereafter, ..., he shall be fined not more than two hundred dollars ($200.00).
[8] Miss. Code Ann. § 97-3-19(a) (Supp. 1988).
[9] Miss. Code Ann. § 97-3-35 (1972).
[10] Miss. Code Ann. § 97-3-53 (Supp. 1988).
[11] Miss. Code Ann. § 97-29-1 (1972).
[12] This does not mean that Knapp may sit silently until the time of trial and then take the witness stand and waive the privilege by testifying in support of the claims and denials of his answer. If he intends to waive his privilege, he must do so reasonably in advance of trial and afford Hutchins reasonable opportunity for discovery. On the other hand, if he wishes to sit on his privilege throughout, that he may do. That this may present Knapp and his counsel something of a tactical dilemma is beside the point.