KITCHENS, JUSTICE, SPECIALLY CONCURRING:
 

 ¶ 19. I concur with the majority's holding that, because the trial court did not require the State to present a
 
 prima facie
 
 case that Gary's confession was voluntary and that he knowingly, intelligently, and voluntarily waived his
 
 Miranda
 

 [6]
 
 rights, the trial court erred by admitting the video recording of Gary's confession and his written statements. I write separately to address the clear Fifth Amendment violation that occurred when Gary was compelled to give evidence against himself by authenticating the video recording of his
 own statement and his own written statements.
 

 ¶ 20. "One of the most settled premises in our constitutional jurisprudence is that no individual may be compelled to testify against himself or to offer testimony which might render him liable to a criminal prosecution."
 
 Moore v. Moore
 
 ,
 
 558 So.2d 834
 
 , 836 (Miss. 1990). The Fifth Amendment to the United States Constitution provides that no person shall be compelled to be a witness against himself. U.S. Const. Amend. V ; U.S. Const. Amend XIV. And, under Article 3, Section 26, of our state constitution, the accused cannot "be compelled to give evidence against himself." Miss. Const. Art. 3, § 26. Under the Fifth Amendment, "[a] defendant is protected not merely from being placed on the witness stand and compelled to testify to his version of the matters set forth in the indictment; he is protected from authenticating by his oath any documents that are sought to be used against him ...."
 
 Haywood v. United States
 
 ,
 
 268 F. 795
 
 , 802 (7th Cir. 1920).
 

 ¶ 21. The accused may assert the privilege against self incrimination on a question-by-question basis or refuse to take the witness stand at all.
 
 Knapp v. State
 
 ,
 
 536 So.2d 1330
 
 , 1334 (Miss. 1988). A defendant can waive the right against self incrimination by voluntarily and knowingly taking the witness stand and responding to questions.
 
 Hentz v. State
 
 ,
 
 496 So.2d 668
 
 , 673 (Miss. 1986). But no waiver occurs if the defendant's counsel timely objects to questions that would elicit incriminating information.
 
 Moore
 
 ,
 
 558 So.2d at 838
 
 .
 

 ¶ 22. What occurred in this case starkly contravened these basic principles. Gary filed a motion to suppress his statements and a motion to suppress the videotape of his interrogation. The State bears the burden of proving that a confession is voluntary and admissible. According to the procedure for determining the voluntariness of a confession set out in
 
 Agee v. State
 
 ,
 
 185 So.2d 671
 
 , 673 (Miss. 1966), the State makes a
 
 prima facie
 
 case of admissibility by presenting testimony that the confession was voluntary.
 

 Id.
 

 Once the State makes a
 
 prima facie
 
 case, the burden shifts to the defendant to make specific allegations of coercion.
 

 Id.
 

 Then, the State can offer rebuttal testimony.
 

 Id.
 

 ¶ 23. As discussed in the majority opinion, no formal suppression hearing occurred in this case. Instead, in its ruling, the trial court pieced together facts gleaned from other preliminary proceedings to support the denial of the motions to suppress. The first such preliminary proceeding was the May 8, 2014, hearing on the State's motion to determine the availability of Patricia Wilder, one of the two officers who took Gary's statements; the other officer, Eric Smith, was deceased.
 

 ¶ 24. At this hearing, defense counsel argued that, if Wilder was deemed unavailable due to her post-traumatic stress disorder, the trial court should suppress Gary's statements because the State could not make out a
 
 prima facie
 
 case that the statements were voluntary and that Gary's
 
 Miranda
 
 waiver was knowing, intelligent, and voluntary. Thus, defense counsel argued, the availability determination was "critical" to the motions to suppress. Defense counsel argued that, if Wilder was declared unavailable, the trial court must categorically grant the motions to suppress.
 

 ¶ 25. Defense counsel also asserted that, without testimony from the officers, the State would be unable to authenticate the videotaped confession. The following colloquy occurred:
 

 BY MS. KELLY: .... So there's a suppression of the videotape on the basis of the insufficient warning, but further, without Detective Wilder's testimony,
 the State cannot possibly authenticate the videotape because the only three people connected to the videotape were Detective Eric Smith, Detective Wilder and Mr. Gary.
 
 Mr. Gary is certainly not going to abandon his 5th Amendment right of self-incrimination to authenticate the very tape that would be used against him
 
 .
 

 BY THE COURT: Ms. Kelly, what's your client's date of birth? What's his date of birth?
 

 BY MS. KELLY: I'm going to have to ask him, sir. I know it, but I don't have it with me. 11/19/94.
 

 BY THE COURT: 11/19 of '94?
 

 BY MS. KELLY: Yes, sir. I'm sorry. 11/9 of '94. He was 17 at the time. He's no longer 17. He's been locked up for several years now.
 

 (Emphasis added.) The State averred that its records showed Gary's birthday was November 9, 1993, which would have meant that he was eighteen years old at the times of the crime and the interrogation. Defense counsel then stated: "I just clarified with my client. For the very limited purpose of the [c]ourt ascertaining his correct birthday, he will-I will allow him to answer the [c]ourt under oath as to his birth date." The State requested limited cross examination of Gary as to his birth date. Defense counsel agreed, "[s]o long as the limited cross-examination deals with the date of birth only."
 

 ¶ 26. Accordingly, Gary, after being sworn, testified that his correct birth date was November 9, 1994. On cross examination, the State asked Gary if, during his interrogation, he had informed the detectives that he was born in 1993. Gary denied that the detectives had asked him about his birthday. The State then asked if Gary had signed and initialed his
 
 Miranda
 
 rights waiver form and his written statements. At this point, these documents were marked for identification only. Gary agreed that he had signed the waiver form and one of the statements, but he denied having initialed the statement. The State also elicited Gary's testimony that he had an eighth grade education and could read and write. Defense counsel objected that this questioning was beyond the scope of Gary's birth date.
 

 ¶ 27. Then the State informed the trial court that Gary had stated his birth date on the videotaped recording of his confession. The State requested to publish the recorded interview, and defense counsel objected. The trial court overruled the objection and allowed a portion of the videotape to be played. When the recording was played, the State elicited Gary's testimony that he was the person on the videotape, and that the videotape was a recording of his interview. Again, defense counsel objected.
 

 ¶ 28. Before the trial began on May 12, 2014, the trial court informed the parties of its finding that Wilder was unavailable and of its denial of the motions to suppress.
 
 [7]
 
 The trial court stated that, based on its review of Gary's videotaped statement, the State had made out a
 
 prima facie
 
 case of voluntariness. Defense counsel argued that, because the State had presented no testimony, no
 
 prima facie
 
 case had been made. Defense counsel argued that the trial court's viewing of the videotape had been for the limited purpose of determining Gary's age, not for the purpose of ruling on the motions to suppress. Defense counsel requested that the trial court either grant the motions to suppress
 or continue the case until Wilder became well enough to testify, enabling State to establish a
 
 prima facie
 
 case. The State argued that the trial court had sufficient information to rule on the motion to suppress based on Gary's testimony as to his age and education level, and his authentication of the videotaped confession. Defense counsel responded that "without Detective Wilder, they simply can't authenticate the statement or the tape without Mr. Gary's waiving his Fifth Amendment rights, which he will not do at this point."
 

 ¶ 29. The trial court denied the motion for a continuance, finding that "the
 
 Miranda
 
 waiver was signed and initialed various times by the defendant. The defendant acknowledged signing the waiver during the video statement, and the defendant confirmed during the video statement that he had not been threatened or coerced to give the statement at issue." In an order entered after Gary's sentencing, the trial court expounded on its reasoning for denying the motion to suppress. Concerning the fact that the State had presented no evidence, the trial court stated:
 

 The totality of the circumstances approach supports this [c]ourt's finding that the evidence presented by the parties during the May 8, 2014[,] hearing was sufficient to find that the State made the necessary prima facie case. The defendant verified under oath that he initialed and signed the
 
 Miranda
 
 waiver. The defendant confirmed under oath that he was [the] interviewee in the videotape. Although the recitation of the defendant's
 
 Miranda
 
 rights were [sic] not made on the videotape, Detective Smith and the defendant confirmed on at least two different occasions during the tape that the
 
 Miranda
 
 warnings were given to the defendant, he understood these rights, and that he was not threatened or coerced into giving the statement. Notably, the [c]ourt found very persuasive that throughout the videotape, both the detectives
 
 and
 
 the defendant were calm, collected, and rational. Due to the aforementioned circumstances, among others, the [c]ourt did not require testimony to establish the prima facie case of voluntariness.
 

 (Emphasis in original.) Having found that the State had made its
 
 prima facie
 
 case, the trial court went on to find that Gary had not presented any evidence that his confession had been coerced. The trial court found from the "totality of the circumstances" that Gary's
 
 Miranda
 
 waiver had been knowing, intelligent, and voluntary, and that his confession was not the result of coercion.
 

 ¶ 30. The majority correctly holds that, because the State did not make out a
 
 prima facie
 
 case, the trial court erred by weighing the evidence. But what occurred in this case also implicated Gary's right against self incrimination. After conferring with Gary, defense counsel permitted him to take the stand to testify about his birth date and to answer questions on cross examination limited to his birth date. When the State's questions veered away from the subject of Gary's birth date, defense counsel objected. Defense counsel also contemporaneously objected on Fifth Amendment grounds to the State's elicitation of Gary's authentication of the videotaped recording and written statements. While Gary's waiver did expose him to the State's use of his prior inconsistent statements to impeach his direct testimony about his age, defense counsel's objections make clear that his waiver did not extend to authentication of the videotaped recording and written statements for use as substantive evidence against him. The trial court's overruling of those objections forced Gary to incriminate himself by authenticating the evidence against him, in
 clear violation of the Fifth Amendment of the United States Constitution and Article 3, Section 26, of the Mississippi Constitution. Simply put, Gary was forced to give evidence against himself, in violation of one of our most basic tenets of constitutional law. Even without the gross mishandling of the suppression motions, this error alone would warrant reversal.
 

 ¶ 31. I agree that this case must be remanded for the trial court to hold a suppression hearing to determine whether Gary's confession was admissible. This case is distinguishable from
 
 Keller v. State
 
 ,
 
 138 So.3d 817
 
 (Miss. 2014), in which I dissented. In
 
 Keller
 
 , I wrote that the majority erroneously entered an order that reopened a suppression hearing to permit the State to put on additional evidence. In my opinion, that order impermissibly gave the State a second opportunity to adduce testimony that the accused's confession was voluntary.
 
 Keller
 
 ,
 
 138 So.3d at 878
 
 (Kitchens, J., dissenting). Unlike
 
 Keller
 
 , in this case, because no suppression hearing occurred, neither the State nor the defense had an opportunity to present any evidence. Therefore, this Court appropriately remands to the trial court with instructions to hold a suppression hearing. If the trial court finds that confession was admissible, no new trial is required.
 
 Jackson v. Denno
 
 ,
 
 378 U.S. 368
 
 , 395,
 
 84 S.Ct. 1774
 
 ,
 
 12 L.Ed.2d 908
 
 (1964).
 

 DICKINSON, P.J., KING AND COLEMAN, JJ., JOIN THIS OPINION.
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966).
 

 The trial court already had provided the parties with informal notice of these rulings by email.